ALEXANDER CRAWFORD et al. *vs.* ANN SHORT, JAMES SHORT et. al.

Sec. 3 of ch 106, 8 v. D. L 92 is constitutional.
An appeal from the orphans' court cannot be heard without a statement of the points decided
It is the duty of the party to apply for such statement.
Effect of the dismissal of an appeal without prejudice.
The superior court cannot send a mandamus to the orphans' court to compel the signing of a bill of exceptions.

APPEAL from the orphans' court of Newcastle county.
Record.   In the case of the return of partition and valuation of the real estate of Abraham Short, deceased.   July term, 1830.   Decree

trine on this subject in the two countries.   In England it is held that assignments under the bankrupt laws transfer moveable property, wherever it may be situate, applying the principle that personal property has no locality, that the assignment under the bankrupt laws transfers all the bankrupt's title as fully as he might do by a voluntary assignment or sale, and that the assignees become the lawful owners of it, to be administered for the benefit of the creditors.   And they give the same effect to assignments made under the bankrupt laws of other countries, without any distinction as to citizens and foreigners.   Thus an attachment of the property of a foreign bankrupt by an English creditor, after bankruptcy, will not be sustained against the assignment, with or without notice. *(Story's Com.* 345.)   And this principle is not without support in this country, *(Goodwin* vs. *Jones,* 3 *Mass. R.* 517; *Holmes* vs. *Remsen,* 4 *John C. R.* 460*)* but the weight of authority is the other way.   And although it was sustained by Chancellor Kent, in the case of *Holmes* vs. *Remsen,* he admits, in the second volume of his Commentaries, page 406, that "it may now be considered as a part of the settled jurisprudence of this country, that personal property as against creditors has locality, and the *lex loci rei sitæ* prevails over the law of the domicil with regard to the rule of preferences in the case of insolvents' estates."   A prior assignment in bankruptcy, under a foreign law, will not be permitted to prevail against a subsequent attachment by an American creditor of the bankrupt's effects found here; and our courts will not subject our citizens to the inconvenience of seeking their dividends abroad when they have the means to satisfy them under their own control.   It was so decided in Maryland in *Burk* vs. *McLean,* 1 *Harr. & McHenry,* 236, and *Wallace* vs. *Patterson,* 2 *Harr. & McH.* 463; in Pennsylvania, in *Milne* vs. *Moreton,* 6. *Binn Rep.* 353, and *Mulliken* vs. *Aughinbaugh,* 1 *Penn. Rep.* 117; in North Carolina, *(*2 *Haywood's Rep.* 24;*)* South Carolina, *(*4 *McCord's Rep.* 519;*)* Connecticut, *(Kirby's Rep.* 313;*)* and also in the supreme court of the United States, in *Ogden* vs. *Saunders,* 12 *Wheaton R.* 213.   The case of *Holmes* vs. *Remsen* has also been ably questioned in the supreme court of New York, in a case at law between the same parties. 20 *Johns. Rep.* 254.
The law, therefore, is fully settled, in this country, against the admitted doctrine of the English courts, that an assignment under the bankrupt or insolvent laws of a foreign country will not transfer the bankrupt's property, including choses in action, in this country so as to prevent a subsequent attachment by the bankrupt's creditors here.
But in the case before the court both the attaching creditors and the assignees were citizens of Pennsylvania.   It was altogether a transaction between foreigners.   Supposing such an assignment to be valid according to the laws of that state, and that its effect there would be to transfer all the property of Bowers & Glasby to Stryker, the question would arise whether there was any reason why our courts should not, in the usual comity of na-

in relation to costs. Appeal prayed and granted. 25th September, 1832. Decree approving and confirming the return of freeholders. Appeal prayed and granted. In superior court, November term, 1832. Appeal from the aforesaid decrees received and filed. "And

tions, give it the same effect here as between citizens of that state. This point was not decided, it being rendered unnecessary by the terms of the assignment; and it may be considered as still open and worthy of grave consideration, notwithstanding the intimation which the court gave of the inclination of their opinion.

A distinction has been taken in some of the cases on this subject between voluntary conveyances and conveyances *in invitum*, by the mere operation of law, as in cases of bankruptcy and insolvency. *(Kaims on Equity, b.* 3 *ch.* 8, *s.* 6; *Story* 6 *Com.* 346.) But it does not appear to be established. Chancellor Kent, in *Holmes* vs. *Remsen*, thought himself bound to give effect to the assignment, "because it is equivalent to a voluntary act of the party over his own property."—"Every man's assent is presumed to a statute." And Chief Justice Parsons, in *Goodwin* vs. *Jones*, "considered the assignment under the bankrupt laws as the party's own act, since it was in the execution of laws by which he was bound, and since he voluntarily committed the act which authorized the making it." The distinction is not between a bona fide sale for a valuable consideration (which would certainly be good against a subsequent attaching creditor) and a statutory transfer; but it is between a voluntary assignment in contemplation of insolvency and a compulsory assignment under the operation of the insolvent laws; and no such distinction appears to be sustainable on principle or sustained by authority. On the contrary, the supreme court of Massachusetts decided, in *Ingraham* vs. *Geyer, (*13 *Mass. Rep.* 146) that a *voluntary* assignment by a debtor of all his property, made in Pennsylvania, for the benefit of creditors *generally*, should not prevail over a subsequent attachment, because such assignment would be void by the laws of Massachusetts, if made there, as being in fraud of creditors. And *Fox* vs. *Adams,* 5 *Greenleaf's Rep.* 245; *Oliveir* vs. *Townes,* 14 *Martin's Louis. Rep.* 93; and *Norris* vs. *Mumford,* 4 *Martin's Louis. R.* 20, are to the same effect.

The principal case was much stronger. It was not the case of an assignment for the benefit of other creditors than a single preferred one; and any assignment preferring creditors is, by the express terms of our act of assembly, declared to be fraudulent and void, and the property intended to be transferred thereby remains liable to be taken in execution or attached for the payment of the assignor's debts, in the same manner as if no such assignment had been made. *(Dig.* 140.) Can our courts in any manner give effect to such an assignment? It is not pretended that our laws can make this transaction illegal where it was executed, if by the laws of that place it is authorized; but if the aid of our courts is invoked to give it effect within our jurisdiction and over property which it cannot reach unless our courts recognize its validity here, could they do so consistently with a just regard to our own laws? In *Forbes* vs. *Cochrane,* 2 *Barn & Creswell* 448, 471, Mr. Justice Best says that in cases turning on the comity of nations it is a maxim, that the comity cannot prevail in cases where it violates the law of our own country, the law of nature, or the law of God. And all the authorities sustain the position of Chancellor Kent, (2 *Com.* 461) "that when the *lex domicilii* and the *lex fori* come in direct collision, the comity of nations must yield to the positive law of the land. In tali conflictu magis est ut jus nostrum quam jus alienum servemus." And the supreme court of Louisiana has adopted the rule, that whenever, in a conflict of laws, it is a matter of doubt which should prevail, the court which decides will prefer the law of its own country to that of the stranger. (17 *Martin's Rep.* 596.)

now, to wit, this eleventh day of December, 1832, upon opening the above cases to the court, it appearing to the court that no instrument in the nature of a bill of exceptions presenting fairly and fully the point or points decided, for which said exceptions were taken, had been signed and sealed by the said orphans' court, or one of the judges thereof: It is ordered by the court that the appeals be therefore dismissed without prejudice, and the record remanded to the court below." In the orphans court, March 7, 1833. "And now, to wit, this first day of March. A. D. 1833, an appeal is prayed by Alexander Crawford, in right of his wife, Rebecca, and by Jacob Moore, in right of his wife, Margaret, from the order and decree of this court of September 25th, 1832, approving and confirming the return in this cause, which is refused by the said court; and the said parties so appealing also pray the said court to sign and seal an instrument in the nature of a bill of exceptions, presenting fairly and fully the points decided for which the said parties except to the said order and decree, which is refused by the said court, on the ground that a former appeal has been taken in the cause and dismissed by the superior court."

*Bayard*, for appellants. This case again comes up before the court under very peculiar circumstances. The appeal was dismissed last term, without prejudice, for an informality in the record. We went down to the orphans' court to get the record completed, but the presiding judge, who sat alone, refused to sign a bill of exceptions, and has placed that refusal and the reasons for it on the record. Having done what was in our power to comply with the act of assembly in this behalf, and failed to procure the necessary document, we return to this court for remedy. We insist that the right of appeal is secured to us by the constitution; we have not had that right in this case; and if the forms of proceeding as prescribed either by the practice of the court or the act of assembly prevent our enjoying this right to its full extent, they ought to be disregarded or changed. I shall enquire, therefore, first, whether the third section of the act to carry into effect the amended constitution, (8 *vol.* 92) making it necessary for a party to procure from the judges of the orphans' court a paper in the nature of a bill of exceptions as the foundation of an appeal, be itself constitutional; and second, what was the effect of the dismissal of the first appeal by this court.

On the constitutional question: Power is inherent in the body of the people: all bodies, whether legislative, judicial or executive, act by a delegated power, and have none other than such as are delegated or essential to the exercise of those that are granted. The judiciary has the right to construe these delegations of power, and to say whether the legislature has exceeded those which properly belong to it. The constitution gives the right of appeal in this case. The legislature cannot qualify or restrict this right by imposing any terms on a party which it is not in his power to execute. I admit that the legislature may limit the exercise of this right to a certain time, or prescribe the form of its enjoyment, but they must still leave to the party the full power of appeal. Section 3d of the act under consideration restricts the right of appeal to points of law: the constitution gives an unlimited right of appeal. The orphans' court decides as well on

the facts as the law, and so must the court of appeal. The law compels a party to procure a bill of exceptions: the constitution has no such pre-requisite. The signing such bill is a matter in the discretion of the judge, which the party cannot control. This constitutional right therefore is made to be dependant on the will of the judge. The legislature has no more power to impose this restriction than wholly to take away the right of appeal. Cannot a meaning be given to this act which will not conflict with the constitution? If it can, the court will so construe it; if not, they will nullify it. The meaning I would give to it, then, is, that it is the privilege of a party to obtain a bill of exceptions stating the points of his case, but not his duty. It may frequently be convenient to do so, and in furtherance of his right of appeal, but not obligatory in all cases. The law imposes an obligation on the judge, when the party desires a statement, to give it; and not on the party to obtain it, or lose his right of appeal.

The question, then, is, whether the refusal of the judge to sign the exceptions can deprive the party of his appeal; and, if the refusal appear on the record, whether this court will not hear the appeal without a bill of exceptions. The praying an appeal below is merely formal; the court above has the decision of the right of appeal; and if this court differs from the orphans' court, where the appeal has been refused, what is to be the result? It must of necessity go on to hear the case; for it has no power to send a mandamus to the court below, either to grant the appeal or to sign the bill of exceptions. In determining the right of appeal in this case, we are to consider,

Secondly, whether the dismissal of the former appeal in the manner it was dismissed by this court did prevent another appeal. There is a limitation of the right of appeal to one year after the decree, (*Dig.* 422) and I admit the right of the legislature to make such a limitation, but our second application here was within the year. What was the former dismissal? A dismissal *"without prejudice"* for an informality in the record, which prevented a full hearing of the cause. What is the meaning of "without prejudice?" Certainly without prejudice to some right the party then had. Now the only right he had was that of appeal, for the decree below was final as to the suit, unless reversed; the dismissal then was qualified expressly to save the right of appeal.

*Wales,* for appellee. The constitution establishes the general right of appeal, subject, as all its general principles are, to be carried out, and the mode of its enjoyment prescribed, by legislative provisions. The counsel admits that in many respects the legislature can limit and control this right. But he has argued here as if the appeal had been denied; as if the appellants have never had an opportunity offered them of enjoying this their right of appeal. Now they have had one appeal fully granted, brought up and dismissed by the appellate court. The ground of that dismissal could not be inquired into by the orphans' court. That court saw the case of an appeal prayed, granted, had and ended by dismissal. It heard an application for a second appeal, and decided, as it was bound to do, that the party had no right to a second appeal, and that the case was now at an end. The question then is, whether the orphans' court erred in this deci-

sion; and again, whether the decision on such a matter of practice, the right of appeal, is itself the subject of appeal.

*Rogers*, on the same side. First. Is the party here entitled to a second appeal? The constitution gives him a right to *an* appeal. Has he not enjoyed that right? If he neglected to prosecute his appeal, or brought it forward in an improper manner, it does not follow that he must have another opportunity to do so. The other appeal was dismissed because a bill of exceptions stating the points decided had not been signed. Has it yet been signed? Is the party in any better condition now? Where is his bill of exceptions? And does not the case fall within the authority from 3 *Term Rep.* 776-7, cited by the president of the orphans' court on refusing the second appeal. That was the case of an appeal defectively taken, or not properly prosecuted; yet it was held to be conclusive.

Second. Is the act of 1832 constitutional? The constitution consists merely of fundamental principles, which depend on legislative enactments to carry them out. Thus the seventh section of sixth article. The superior court has power to reserve questions to be heard in the court of appeals. But the legislature has prescribed, and the courts have recognized, the form of reserving these questions. So in the exercise of appellate jurisdiction from chancery; the whole form of taking up the appeal is regulated by act of assembly; and if it were not so regulated it would be competent for this court by its general rules to prescribe these forms.

If this court is to exercise an appellate jurisdiction from the orphans' court, it must exercise that jurisdiction *upon the matters* decided below. The appeal is not given except as to matters decided *in* the court below. Now is it not essential to prescribe some form of ascertaining what this decision was; what matters were adjudicated in the orphans' court; and was it not competent for the legislature to prescribe such forms as would put this court in possession of the points decided there? The act does not take away any right of appeal, but it enables the party to exercise that right in the only manner he can properly bring his case before the appellate court. If he has neglected to pursue this course, it is not the fault of the law, nor of the constitution, one of which has secured to him the right, and the other the means of enjoying the right, of appeal.

*Read, jr.,* in reply. In a case in the orphans' court relating to real estate, and where the president sat alone, a decision was made from which we appealed. The right of appeal in such a case is not questioned. The appeal was taken, and the moment it was opened in the appellate court that court dismissed it, though without prejudice, because no paper stating the points decided below had been signed and sent up. We returned to the orphans' court and asked it to supply this deficiency, which was refused because a former appeal had been taken and dismissed. The question then is, will not this court hear the appeal without such a paper? If we have not once had an appeal in this case, we are entitled to it. What is an appeal? An opportunity of having a case reheard on all the matters disclosed in the court below, and in relation to which that court decided. Has there ever been such an appeal here? No. The informality of the record, an informality of the court as well as of the counsel, preven-

ted even a hearing on that appeal. And to avoid any prejudice to the party appellant from the action of the appellate court it expressly dismissed the appeal without prejudice. These words are nugatory and idle if the dismissal concluded this case. The meaning of such a qualified dismissal is well ascertained in chancery. It decides nothing, prejudges nothing, asserts or denies nothing, but leaves the parties in the full enjoyment of all their rights. Standing thus as if no action on the case had taken place in this court, we applied to the orphans' court to perfect the record. That court considered it an application for a *second* appeal, and refused it. From that decision we have the right of appeal; and having the decision and the ground of it on the record, we ask this court to reverse it, and to proceed in the hearing of the case at large without the bill of exceptions which it now appears we cannot procure. The case cited from Term Reports was a general dismissal of the first appeal on hearing. The application was actually for a second appeal. The opinion of Mr. Justice Buller proves this.

*Curia advisare vult.*

*Harrington, J.* The preliminary question in this cause is, whether the third section of the "act to carry into effect the amended constitution and for other purposes" is constitutional. If it be so, this case is at an end, for the appellants are now in no better condition than they were when last in court, and when their appeal was dismissed for want of such a statement of the points decided by the orphans' court as is required by that law. And here we are met, in limine, with the inquiry, how is it possible for this court to set in appeal to revise the decisions of the orphans' court without knowing, and without the means of knowing, what those decisions are? It is very true that the constitution secures to the party a right of appeal to this court from the decisions of the judges of the orphans' court "in all matters involving a right to real estate, or the appraised value or other value thereof," and in all cases, from the decisions of either one of the judges of that court sitting alone: but it is obvious that for the enjoyment of this right some provision was necessary to be made to put the court of appeal in possession of the decisions which were appealed from. The appeal is not in the nature of a new trial or general rehearing of the case before a new tribunal; but it is simply the right of having the decisions below examined by another court on precisely the same state of facts as was presented to that court. This necessarily requires a statement to be made to this court of the points decided by the orphans' court, and the constitution being silent on the subject, it is necessarily left to the legislature to make such arrangements as may be requisite for the perfect enjoyment of this right of appeal. The section of the law under consideration is an attempt to effect this object; it may be imperfect, and thus have failed to procure in every case the means of enjoying this constitutional right; but this only proves that further legislation is necessary, and not that the attempt already made is unconstitutional because it may be imperfect. It stands upon the same footing with the "act concerning bills of exception, cases stated, and verdicts," which regulates the practice in writs of error sent to the court, and which must necessarily be unconstitutional if the section now under consideration is so.

I think they are both in affirmance and in furtherance of the constitution, and that the legislature had the right, and it is their duty, to make suitable, and, if necessary, further provision for securing the enjoyment of this right of appeal. The constitution furnishes, and can furnish, but a general outline of rights and duties and powers, leaving matters in detail to be regulated by legislative provision. And wherever a right is secured by the constitution, but the means of its enjoyment are not pointed out, it is left to the legislature to furnish them. In this case it has done so. It has made it expressly the duty of the judge, "at the request of the party appealing," to sign and seal an instrument, in the nature of a bill of exceptions, presenting fairly and fully the point or points decided, for which the exception is taken. An appeal was taken from the original decision of the chancellor, but no statement of the points decided was signed by him, nor was any application made to him for this purpose. It was his duty to sign it only at the request of the party appealing, and if he is now deprived of his appeal, it is from his own neglect.

We come now to consider the second decision of the orphans' court, refusing an appeal, and refusing to sign an instrument in the nature of a bill of exceptions after this court had dismissed the first appeal. We have still no statement of the matters involved in the first decision, and no such statement of the point finally decided as is required by the act of assembly; but we have it stated on the record that the refusal by the orphans' court of the second application for an appeal, and of the only application that was made for a statement of the points decided, was on the ground that a former appeal had been taken in the cause and dismissed by this court. The question then arises, whether this court would take up an appeal without the statement required by the act of assembly in a case where the record otherwise shows the points decided, and where it appears that the judges of the orphans' court had refused to sign a statement of the points. I should say without hesitation that it would; for the failure to get the legal and proper statement does not in such a case arise from the laches of the appellant, and this court is enabled from the record otherwise to ascertain the matters actually decided below. But not so where the record does not show the points decided, or where the failure to get the legal and proper evidence of the decision is entirely owing to the neglect of the appellant. In the case of *Barns* vs. *Murray and wife,* in Sussex county, last term, the appellant had his appeal dismissed for the want of a sufficient statement of the points, though a statement was signed and sent up; and this court afterwards refused to receive another statement which the judge had signed to amend the defects of the first. The party lost the benefit of his appeal by his own laches. So in this case it was the neglect of the party in not procuring a statement at the time he took his appeal, and we have not the means of ascertaining what was decided below, or what is appealed from. We cannot try such an appeal. We could rehear his case, but it would not be a review of a previous decision, but a new trial of the case. This is not what was designed by the right of appeal granted by the constitution.

Whether the last decision of the orphans' court is correct or not,

the appellants are not here in a condition to have their appeal from the original decision tried, which is their object. I have looked somewhat into that question, and though I do not think it necessary to decide it, I will say that the case cited from 3 *Term Rep.* is a strong authority in favor of the chancellor's decision. It was an application for a mandamus to the quarter sessions to try an appeal against a conviction by a justice of the peace. The statute gave the right to appeal within six months, on giving notice of the intention to appeal and giving security, within four days after the notice, to prosecute the appeal. Notice of the appeal was given, and also security; but, it appearing that the security was not entered into within the four days, the appeal was disallowed. The appellants within the six months gave a second notice and entered into security in due form; but the sessions refused to try the appeal, being of opinion that the appellants were concluded. The court refused the mandamus. Lord Kenyon said that after the appeal was lodged and adjudged by the justices to be informal they were functi officio and could not take cognizance of a second appeal. Ashurst went on the ground of the neglect of the appellant, and Buller thought that even the first notice without the dismissal precluded a further appeal. Grose, J. concurred. Now, whatever may be the effect of this court having dismissed the first appeal *without prejudice,* it was a decision that the appeal was informal, and goes the full length of the authority cited.

I am of the opinion that this court ought not to entertain the appeal.

The other judges concurred generally.

Appeal dismissed.

*Mr. Bayard* moved to reinstate the appeal, and for a rule to show cause why a mandamus should not issue to the president judge of the orphans' court, commanding him to sign and seal an instrument in the nature of a bill of exceptions, presenting fairly and fully the points decided; which was refused, without argument. The court referred to the case of *Worknot, use of Earle,* vs. *Millen,* in the late high court of errors and appeals, in which that court decided that it had not the power to send a mandamus to the supreme court.

So Mr. Bayard took nothing by his motion.

*J. A. Bayard* and *Read, jr.* for appellants.
*Wales* and *Rogers,* for appellees.